**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MICHAEL SCOFIELD, individually and on behalf of all others similarly situated

Plaintiff,

vs.

POWER HOME REMODELING GROUP, LLC,

Defendant.

Case No. 2:26-cv-07016-KBH

**DEFENDANT POWER HOME REMODELING GROUP, LLC'S BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS ..... 2

ARGUMENT ..... 4

I. THE COURT SHOULD DISMISS THE COMPLAINT UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM UNDER THE TCPA ..... 4

A. Plaintiff Does Not Allege the Requisite Number of Telephone Solicitations to Maintain a Claim ..... 5

1. Section 227(c) of the TCPA Does Not Apply to Text Messages ..... 5

2. Plaintiff Fails to Plead Facts Supporting Receipt of More Than One “Telephone Solicitation” Under Section 227(c) ..... 9

B. Cell Phones Are Not “Residential Telephones” Under the TCPA ..... 10

C. The Court Should Dismiss Plaintiff’s Request for Treble Damages Under Rule 12(b)(6) Because Plaintiff Does Not Allege a Willful or Knowing Violation of the TCPA ..... 15

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....4

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
591 U.S. 610 (2020)....13, 14

*Bronstin v. Happy Cabbage Analytics, Inc.*,
2026 WL 3343316 (M.D. Pa. Oct. 29, 2026)....5, 6, 8

*Card v. R.J. Reynolds Tobacco Holdings, Inc.*,
2026 WL 2673068 (M.D.N.C. Sept. 3, 2026)....8

*Chennette v. Porch.com, Inc.*,
50 F.4th 1217 (9th Cir. 2022)....13

*Conn. Nat'l Bank v. Germain*,
503 U.S. 249 (1992)....13

*Conrad v. Hart Consumer Prods.*,
2026 WL 2741623 (N.D. Ala. Sept. 16, 2026)....8

*Cunningham v. Caribbean Cruise Lines, Inc.*,
2016 WL 7494871 (S.D. Fla. Dec. 29, 2016)....11

*Cunningham v. Enagic USA, Inc.*,
2017 WL 2719992 (M.D. Tenn. June 23, 2017)....14

*Cunningham v. Politi*,
2019 WL 2519702 (E.D. Tex. Apr. 26, 2019)....11, 14

*Cunningham v. Spectrum Tax Relief LLC*,
2017 WL 3222559 (M.D. Tenn. July 7, 2017)....14

*Cunningham v. Sunshine Consulting Grp., LLC*,
2018 WL 3496538 (M.D. Tenn. July 20, 2018)....11, 14

*Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*,
450 F.3d 130 (3d Cir. 2006)....4

*Dahdah v. Rocket Mortg. LLC*,
2023 WL 5941730 (E.D. Mich. Sept. 12, 2023)....9

*Davis v. CVS Pharmacy, Inc.*,
797 F. Supp. 3d 1270 (N.D. Fla. 2025)....5, 6, 8

*Dolan v. U.S. Postal Serv.*,
546 U.S. 481 (2006)....14

*Eggleston v. Reward Zone USA LLC*,
2022 WL 886094 (C.D. Cal. Jan. 28, 2022)....9

*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021)....5

*Gaker v. Q3M Ins. Sols.*,
2023 WL 2472649 (W.D.N.C. Feb. 8, 2023)....11, 14

*Gillam v. Reliance First Cap., LLC*,
2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023)....1, 9

*Gozlon-Peretz v. United States*,
498 U.S. 395 (1991)....13

*Greene v. Select Funding, LLC*,
2021 WL 4926495 (C.D. Cal. Feb. 5, 2021)....9

*Hamdan v. Rumsfeld*,
548 U.S. 557 (2006)....12

*Irvin v. Sonic Indus. Servs., LLC*,
2026 WL 1098403 (N.D. Ga. Apr. 20, 2026)....8

*James v. Smarter Contact, Inc.*,
828 F. Supp. 3d 1367 (M.D. Fla. 2026)....8

*Johnson v. Palmer Admin. Servs., Inc.*,
2022 WL 17546957 (E.D. Tex. Oct. 20, 2022)....13

*Jones v. Blackstone Med. Servs., LLC*,
792 F. Supp. 3d 894 (C.D. Ill. 2025)....5, 6, 7

*KHS Corp. v. Singer Fin. Corp.*,
376 F. Supp. 3d 524 (E.D. Pa. 2019)....15

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)....5, 7, 8, 11

*Lopresti v. Nouveau Essentials Mktg. LLC*,
2026 WL 964758 (M.D. Fla. Feb. 26, 2026)....8

*Lowrey v. Twilio, Inc.*,
2026 WL 2958730 (W.D. Va. Oct. 1, 2026)........................................................... *passim*

*Malleus v. George*,
641 F.3d 560 (3d Cir. 2011)..........................................................................................4

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
606 U.S. 146 (2025)...................................................................................................7, 8

*Moore v. Triumph CSR Acquisition, LLC*,
2023 WL 8601528 (N.D. Ill. Dec. 12, 2023)...................................................10, 11, 13

*Morgan v. U.S. Xpress, Inc.*,
2018 WL 3580775 (W.D. Va. July 25, 2018)...............................................................13

*Radvansky v. 1-800-Flowers.com, Inc.*,
2026 WL 456919 (N.D. Ga. Feb. 17, 2026) ....................................................................8

*Radvansky v. 1st Class Med.*,
2026 WL 2858562 (D. Colo. Sept. 23, 2026)..................................................................8

*Richards v. Fashion Nova, LLC*,
2026 WL 847568 (S.D. Ind. Mar. 26, 2026)....................................................................8

*Richards v. Shein Distrib. Corp.*,
2026 WL 847584 (S.D. Ind. Mar. 26, 2026)....................................................................8

*Robert W. Mauthe MD PC v. Millennium Health LLC*,
58 F.4th 93 (3d Cir. 2023) ..........................................................................................10

*Rush v. SelectQuote Ins. Servs., Inc.*,
2026 WL 2495598 (W.D. Mo. July 30, 2026)..................................................................8

*Santiago v. Warminster Twp.*,
629 F.3d 121 (3d Cir. 2010)..........................................................................................4

*Sayed v. Naturopathica Holistic Health, Inc.*,
2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) ..................................................................8

*Shelton v. Fast Advance Funding, LLC*,
378 F. Supp. 3d 356 (E.D. Pa. 2019) ............................................................................12

*Steidinger v. Blackstone Med. Servs.*,
182 F.4th 532 (7th Cir. 2026) ....................................................................................5, 6

*Stockdale v. Skymount Prop. Grp., LLC*,
825 F. Supp. 3d 622 (N.D. Ohio 2026)...........................................................................8

*Weingrad v. Top Healthcare Options Ins. Agency Co.*,
2024 WL 4228149 (E.D. Pa. Sept. 17, 2024) ....................9, 15

*Zelma v. Art Conway*,
2013 WL 6498548 (D.N.J. Dec. 11, 2013) ....................15

**Statutes**

47 U.S.C. § 227 ....................14

47 U.S.C. § 227(c)(5) .................... *passim*

**Other Authorities**

47 C.F.R. § 64.1200(c) ....................5, 6

47 C.F.R. § 64.1200(c)(2) ....................1, 4, 9, 10

47 C.F.R. § 64.1200(d) ....................13

47 C.F.R. § 64.1200(f)(15) ....................9

*In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,
18 FCC Rcd. 14014 ....................7

*In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,
Report and Order, 7 FCC Rcd. 8752 (1992) ....................6

Defendant Power Home Remodeling Group, LLC ("Power Home" or "Defendant"), by and through its undersigned counsel, respectfully submits this brief in support of its Motion to Dismiss Plaintiff Michael Scofield's Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

**PRELIMINARY STATEMENT**

On September 14, 2026, Plaintiff filed this putative class action against Power Home, asserting a single claim under the National Do-Not-Call ("DNC") Registry provision of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5), and its implementing regulation, 47 C.F.R. § 64.1200(c)(2). (ECF No. 1, the "Complaint" or "Compl.") Plaintiff's claim rests on four communications allegedly received over a three-day period: two text messages on June 20, 2026, and two voice calls on June 22, 2026, all directed to a cellular telephone number. (Compl. ¶¶ 15, 20–23.) Based on those allegations, Plaintiff seeks to represent a nationwide class and to recover statutory damages, treble damages, and injunctive relief. (*Id.* ¶¶ 35, 46–47 & Prayer for Relief.) The Complaint fails to state a claim for several independent reasons.

*First*, Plaintiff fails to allege that he received the requisite number of purportedly violative communications to state a claim. Section 227(c)(5) provides a private right of action only to a person who has received "more than one telephone call" in violation of the DNC regulations. Plaintiff cannot rely upon the two text messages he allegedly received to sustain this element of his claim because a growing consensus of courts, including this Court's sister court in the Middle District of Pennsylvania, as well as the Seventh Circuit, have held that text messages are not "telephone calls" within the meaning of that provision. Setting aside the text messages, Plaintiff is left with two voice calls, and he pleads no facts concerning the content or purpose of the first call—which he admits he did not answer. Accordingly, Plaintiff alleges no facts from which this Court could infer that it was a "telephone solicitation." At best, Plaintiff alleges a single solicitation, and

a single call does not satisfy the provision's requirement that "more than one" allegedly violative call must be received to mount a claim under this provision of the TCPA. *Second*, Section 227(c) protects only "residential telephone subscribers," and Plaintiff alleges communications only to his cellular telephone, which is not a residential line. *Third*, Plaintiff's demand for treble damages rests on nothing more than the bare assertion that the alleged violations were "willful or knowing."

The Court should dismiss the Complaint in its entirety.

## STATEMENT OF FACTS

Plaintiff Michael Scofield is an individual residing in Colorado. (Compl. ¶ 4.) Defendant Power Home is a limited liability company headquartered in Chester, Delaware County, Pennsylvania. (*Id.* ¶ 5.) Plaintiff alleges that his telephone number, which bears a 970 area code, is a "non-commercial cellular telephone number" that he uses for "personal, residential, and household purposes," and that the number has been listed on the National DNC Registry since 2004. (*Id.* ¶¶ 15–17.) Plaintiff further alleges that he has never been a customer of Power Home and that he did not consent to receiving telemarketing calls from Power Home. (*Id.* ¶¶ 14, 18.)

Plaintiff alleges that, on June 20, 2026, he received "two unsolicited telemarketing text message calls promoting Defendant's services." (*Id.* ¶ 20.) The screenshot reproduced in the Complaint shows that both messages were sent from the number (303) 226-8145 at 4:08 p.m. (*Id.* ¶ 21.) The first message consists solely of a hyperlink, which Plaintiff does not allege he clicked. (*Id.*) The second states: "This is Power Home Remodeling. We'll call you in the morning from 303-226-8145 or schedule your free estimate online! Msg&data rates may apply. Reply 'STOP' to end msgs." (*Id.*) The Complaint does not allege that Plaintiff replied "STOP" or otherwise responded to either message.

Plaintiff alleges that, on June 22, 2026, he received a voice call from (303) 226-8145, which he did not answer. (*Id.* ¶ 22.) The Complaint does not allege that the caller left a voicemail, and it

says nothing about the content or purpose of that call. (*See id.*) Plaintiff alleges that he then received a second call that day from the same number, which he answered. (*Id.* ¶ 23.) According to Plaintiff, the caller identified himself as calling on behalf of Power Home and "represented that Defendant had received an online request for a window estimate." (*Id.* ¶ 24.) Plaintiff alleges that he told the caller he had never submitted an online request or inquiry seeking an estimate, and that the caller then transferred him to another representative, who scheduled an in-home appointment. (*Id.* ¶¶ 25–26.)

Plaintiff alleges that, later the same day, an individual identifying himself as "Jon" arrived at Plaintiff's residence for the scheduled appointment, identified himself as a Power Home representative, wore apparel bearing Power Home's logo, presented a company-issued identification card, and provided Plaintiff with his business card. (*Id.* ¶¶ 27–28.) Plaintiff alleges that he told the representative he had not requested an estimate and "explained that the appointment had been scheduled to identify the entity responsible for the unsolicited telemarketing communications directed to" his telephone number. (*Id.* ¶ 29.) The Complaint does not identify any other call or message that Plaintiff allegedly received from or on behalf of Power Home.

Plaintiff alleges, in general terms, that the calls were "unwanted, nonconsensual, and made without Plaintiff's prior express consent." (*Id.* ¶ 30.) Based on these allegations, Plaintiff asserts a single count for violation of 47 U.S.C. § 227(c)(5) on behalf of himself and a putative "National DNC Class" of all persons in the United States whose numbers were on the National DNC Registry for at least 31 days and who received more than one telemarketing call from or on behalf of Power Home within a 12-month period during the four years preceding the filing of the Complaint. (*Id.* ¶¶ 35, 42–47.) Plaintiff seeks class certification, statutory damages of up to $500 per violation, treble damages, injunctive relief, and attorneys' fees and costs. (*Id.* ¶¶ 46–47 & Prayer for Relief.)

## ARGUMENT

### I. THE COURT SHOULD DISMISS THE COMPLAINT UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM UNDER THE TCPA

Plaintiff's Complaint asserts a single cause of action for violation of Section 227(c) of the TCPA, and its implementing regulations, which prohibit "initiat[ing]" more than one "telephone solicitation" call "by or on behalf of the same entity" in a 12-month period to a "residential telephone subscriber who has registered his or her telephone number" on the National DNC Registry. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). As demonstrated below, Plaintiff's claim fails for several reasons.

Under the Federal Rules of Civil Procedure, a court must dismiss a complaint where the plaintiff fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

When deciding a motion to dismiss, a court in the Third Circuit must engage in a three-part inquiry: (1) identify the elements plaintiff must plead to state a claim; (2) strike conclusory allegations; and (3) looking only at the well-pleaded components, evaluate whether all identified elements are sufficiently alleged. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Thus, while Rule 12(b)(6) requires a court to generally accept well-pled factual allegations as true, it "need not credit the non-movant's conclusions of law or unreasonable factual inferences." *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 133 (3d Cir. 2006).

### A. Plaintiff Does Not Allege the Requisite Number of Telephone Solicitations to Maintain a Claim

#### 1. Section 227(c) of the TCPA Does Not Apply to Text Messages

Section 227(c)(5) of the TCPA provides a private right of action to "[a] person who has received more than one *telephone call* within any 12-month period . . . in violation of the regulations prescribed under this subsection . . . ." 47 U.S.C. § 227(c)(5) (emphasis added). This section of the TCPA "does not mention text messages or SMS messages, and nowhere does the TCPA define 'telephone call' to include text and/or SMS messages." *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 901 (C.D. Ill. 2025); *see also Bronstin v. Happy Cabbage Analytics, Inc.*, 2026 WL 3343316, at *5 (M.D. Pa. Oct. 29, 2026) (finding that texts are not "calls" under Section 227(c)(5) because, in part, the word "call" in this section is qualified by the word "telephone," which in 1991 was defined as an instrument that communicated through sounds, which does not include text messages); *Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532, 540 (7th Cir. 2026) (holding that the term "telephone call" is not defined to include text messages)*; Lowrey v. Twilio, Inc.*, 2026 WL 2958730, at *6 (W.D. Va. Oct. 1, 2026) (relying on *Steidinger* to also find that the definition of "telephone call" anticipates sound, and text messages do not fit within this definition); *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1274 (N.D. Fla. 2025) (same). The implementing regulations enacted by the Federal Communications Commission ("FCC") under Section 227(c) reference only "telephone solicitations" and are likewise devoid of any reference to text messages. *See* 47 C.F.R. § 64.1200(c).

"Every statute's meaning is fixed at the time of enactment." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) (citation omitted). Courts "must interpret what Congress wrote" when the statute was enacted in 1991 and cannot rewrite the TCPA to update it for modern technology. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021). "Text messaging was not an

available technology in 1991 [when the TCPA was enacted], and thus 'telephone call' would *not* have included text messages or SMS messages." *Jones*, 792 F. Supp. 3d at 899 (emphasis added); *see also Bronstin*, 2026 WL 3343316, at *5 (examining the definition of "telephone call" in 1991 and concluding that text messages do not fit within the definition because they do not produce sound); *Steidinger*, 182 F.4th at 536 (same, finding that "[b]ased on how telephone messages were understood at the time of enactment, we conclude that modern-day text messages are better understood as messages, not calls."); *Lowrey*, 2026 WL 2958730, at *6 (same, finding that "the plain meaning of 'telephone call' excludes text messages"); *Davis*, 797 F. Supp. 3d at 1273 (stating the conclusion that a text message is not considered a "telephone call" is "supported by the ordinary public meaning at the time of the provision's enactment"). "Thus, under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages." *Jones*, 792 F. Supp. 3d at 899; *see also Davis*, 797 F. Supp. 3d at 1273 ("Certainly, no ordinary person would think of a text message as a 'telephone call.' This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case.").

The FCC's authority to implement regulations under Section 227(c) was limited to "the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations," and those regulations were to issue within nine months from December 20, 1991. 47 U.S.C. § 227(c)(2)–(3). Those regulations were implemented in 1992, as authorized, and do not discuss or refer to text messages. 47 C.F.R. § 64.1200(c); *see also In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, Report and Order, 7 FCC Rcd. 8752 (1992).

While the FCC previously stated in a 2003 Order that, under some circumstances, "calls" do include "text messages," that Order only addressed text messages in the context of the TCPA's

automated calling provision, Section 227(b), which is not at issue in this case. *See In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115–16 ¶ 165, nn. 603–05 (2003); *see also Jones*, 792 F. Supp. 3d at 900 ("on its face . . . the 2003 Order explicitly references only Section 227(b)").

Regardless, the FCC's prior 2003 interpretation is not entitled to deference as the plain language of the TCPA makes clear that texts are not covered under this provision. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025) ("[T]he Hobbs Act does not preclude district courts in enforcement proceedings from independently assessing whether an agency's interpretation of the relevant statute is correct."); *see also Loper*, 603 U.S. at 401 (overruling *Chevron* deference, finding "*Chevron* gravely erred . . . in concluding that the inquiry is fundamentally different just because an administrative interpretation is in play"). Under *McLaughlin* and *Loper*, courts must "independently interpret" statutes under ordinary principles of statutory interpretation—even where the statute delegates discretionary authority to an agency—and must interpret the statute as "if no agency were involved." *Loper*, 603 U.S. at 400.

Properly applied, *McLaughlin* and *Loper* foreclose reading Section 227(c) to reach text messages, which did not exist when the TCPA was enacted. The Seventh Circuit agreed on precisely this ground. *See Steidinger*, 182 F.4th at 535 ("It's undisputed that 'telephone call' couldn't have been thought to cover text messages when the TCPA was enacted in 1991, because the first text message was not sent until the following year."); *Jones*, 792 F. Supp. 3d at 901 ("While the Court affords a certain amount of respect to the FCC's interpretation of the terms used in the TCPA, the fact remains that Section 227(c)(5) of the TCPA includes 'telephone call' and does not mention text messages or SMS messages, and nowhere does the TCPA define 'telephone call' to include text and/or SMS messages.") (citing *Loper* and Alex Fitzpatrick, *How Text Messages Are*

*Being Killed and Replaced*, TIME (Dec. 3, 2014), https://time.com/3612277/text-message-history-future/ ("The world's very first text message, sent Dec. 3, 1992 . . . .")); *Davis*, 797 F. Supp. 3d at 1274 ("[H]owever Congress defines 'telephone solicitation'—and whatever Congress directed the FCC to do in terms of regulating certain 'telephone call[s] or message[s]'—the private right of action Congress created exists only for those who received multiple 'telephone calls.'" (citing 47 U.S.C. § 227(c)(5))).

Indeed, this Court's sister court in the Middle District of Pennsylvania recently found that, under *McLaughlin* and *Loper*, it was not bound by the FCC's interpretation and concluded that texts are not calls under the plain meaning of Section 227(c)(5).[1] *See Bronstin*, 2026 WL 3343316, at *5 ("The court [] is not bound by the FCC's interpretation. . . . Text messages do not typically produce sounds, so they do not fit within the plain meaning of 'telephone call' in § 227(c)(5).").

Accordingly, the two text messages allegedly received by Plaintiff do not provide a basis for a TCPA claim under the National DNC Registry provision.

---

[1] Numerous other District Courts have similarly held that text messages are not telephone calls under Section 227(c)(5) of the TCPA. *See, e.g.*, *Radvansky v. 1st Class Med.*, 2026 WL 2858562, at *3 (D. Colo. Sept. 23, 2026) (holding that text messages are not telephone calls under § 227(c)(5) of the TCPA); *Conrad v. Hart Consumer Prods.*, 2026 WL 2741623, at *13 (N.D. Ala. Sept. 16, 2026) (same); *Card v. R.J. Reynolds Tobacco Holdings, Inc.*, 2026 WL 2673068, at *3 (M.D.N.C. Sept. 3, 2026) (same); *Rush v. SelectQuote Ins. Servs., Inc.*, 2026 WL 2495598, at *4 (W.D. Mo. July 30, 2026) (same); *James v. Smarter Contact, Inc.*, 828 F. Supp. 3d 1367, 1373 (M.D. Fla. 2026) (same); *Richards v. Fashion Nova, LLC*, 2026 WL 847568, at *4–5 (S.D. Ind. Mar. 26, 2026) (same); *Richards v. Shein Distrib. Corp.*, 2026 WL 847584, at *4–5 (S.D. Ind. Mar. 26, 2026) (same); *Radvansky v. 1-800-Flowers.com, Inc.*, 2026 WL 456919, at *5 (N.D. Ga. Feb. 17, 2026) (same); *Lopresti v. Nouveau Essentials Mktg. LLC*, 2026 WL 964758, at *2, 6 (M.D. Fla. Feb. 26, 2026) (same); *Stockdale v. Skymount Prop. Grp., LLC*, 825 F. Supp. 3d 622, 625–27 (N.D. Ohio 2026) (same); *Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) (same); *Irvin v. Sonic Indus. Servs., LLC*, 2026 WL 1098403, at *5 (N.D. Ga. Apr. 20, 2026) (same).

### 2. Plaintiff Fails to Plead Facts Supporting Receipt of More Than One "Telephone Solicitation" Under Section 227(c)

Because the allegations related to text messages do not support Plaintiff's claim, his claim must rest on two alleged voice calls. However, those two voice calls cannot provide a legal basis for Plaintiff's claim.

Plaintiff's claim hinges on two June 22, 2026 "voice calls." (Compl. ¶¶ 22–23.) But Plaintiff concedes that he did not answer the first call, and the Complaint contains no allegations even supporting an inference that this first call constituted a "telephone solicitation." (*Id.* ¶ 22.) This is fatal to Plaintiff's claim, as "more than one" telephone solicitation is required to state a claim under the National DNC Registry provision. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

A "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(15). Federal courts routinely dismiss National DNC Registry claims where the plaintiff fails to plead sufficient facts demonstrating that the alleged calls fit this definition. *See, e.g.*, *Weingrad v. Top Healthcare Options Ins. Agency Co*., 2024 WL 4228149, at *3–4 (E.D. Pa. Sept. 17, 2024) (dismissing complaint where the plaintiff failed to allege the content of the call, reasoning that bare-bones conclusions that the "purpose" of a call was to sell services are insufficient "without further factual enhancement" as to the actual contents of the call).[2] Indeed,

[2] *See also Gillam v. Reliance First Cap., LLC*, 2023 WL 2163775, at *3 (E.D.N.Y. Feb. 22, 2023) (dismissing case where plaintiff "merely conclude[d], without any factual support, that [defendant's] agent 'solicit[ed] refinancing products'"); *Dahdah v. Rocket Mortg. LLC*, 2023 WL 5941730, at *3 (E.D. Mich. Sept. 12, 2023), *vacated on other grounds by* 2023 WL 11944898 (E.D. Mich. Nov. 17, 2023) (dismissing complaint where subject communications did not solicit plaintiff to purchase anything); *Eggleston v. Reward Zone USA LLC*, 2022 WL 886094, at *7 (C.D. Cal. Jan. 28, 2022) (dismissing and holding that "Plaintiff simply relies on conclusory labels such as 'advertisement' and 'promotion' without any supporting factual detail. This falls short of Plaintiff's burden to plead sufficient factual matter to state a plausible claim" under Section 227(c)); *Greene v. Select Funding, LLC*, 2021 WL 4926495, at *5

nowhere in the Complaint does Plaintiff allege—even in a conclusory fashion—that the first alleged June 22, 2026 call constituted a "solicitation." (*See* Compl. ¶ 22.)

Even if the second alleged June 22, 2026 "voice call" constituted a "solicitation" (it did not), a single call is insufficient to state a claim for a violation of Section 227(c)(5). In conjunction with the fact that the two alleged text messages are not calls under the TCPA, and there are no allegations that Plaintiff received more than one "solicitation" call from the two "voice calls" alleged, there is no basis on which Plaintiff's National DNC Registry claim can rest. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

In sum, because the two alleged text messages do not constitute "calls" under the TCPA, and Plaintiff does not allege more than one voice call containing a "telephone solicitation," Plaintiff fails to plausibly state a claim under the TCPA's National DNC Registry provision.[3] The Court should dismiss his claim accordingly.

### B. Cell Phones Are Not "Residential Telephones" Under the TCPA

Additionally, Plaintiff's claim fails because the allegedly violative calls were made to a cell phone. (Compl. ¶ 15.) And contrary to his allegations, "[a] cellular phone and a residential phone are not the same thing." *Moore v. Triumph CSR Acquisition, LLC*, 2023 WL 8601528, at *2 (N.D. Ill.

---

(C.D. Cal. Feb. 5, 2021) (dismissing where plaintiff did not allege content of the calls "that would allow the Court to reasonably infer" they were all telephone "solicitations").

[3] Even if the Court rules that the two text messages constitute "calls" under Section 227(c)(5) (it should not), neither text message constitutes a "telephone solicitation" on which Plaintiff's claim can stand. The first text message consists solely of a hyperlink. (Compl. ¶ 21.) The second states: "This is Power Home Remodeling. We'll call you in the morning from 303-226-8145 or schedule your free estimate online! Msg&data rates may apply. Reply 'STOP' to end msgs." (*Id.*) Although Plaintiff conclusorily labels these text messages "telemarketing text message calls," neither message attempts to sell Plaintiff goods or services on its face. As to the first, it contained only a hyperlink with no accompanying language, and Plaintiff does not allege that he even clicked on the hyperlink. As to the second, it states only that Power Home will call Plaintiff or will schedule a time to set up a free estimate—there is no language attempting to sell Plaintiff anything. *See Robert W. Mauthe MD PC v. Millennium Health LLC*, 58 F.4th 93, 97 (3d Cir. 2023) (finding that a fax was not a "telephone solicitation" where it only encouraged the plaintiff to sign up for a free seminar at a later time, and did not attempt to sell any product, service, or property). As such, neither text message constitutes a "telephone solicitation" that could support Plaintiff's claim.

Dec. 12, 2023). Indeed, courts regularly find that Section 227(c)'s limitation to only residential telephone subscribers excludes complaints where "Plaintiff alleges only the use of his cellular phone[]." *Cunningham v. Politi*, 2019 WL 2519702, at *4 (E.D. Tex. Apr. 26, 2019) (collecting cases); *Cunningham v. Caribbean Cruise Lines, Inc.*, 2016 WL 7494871, at *2 (S.D. Fla. Dec. 29, 2016) ("[T]he Court finds Plaintiff's assertion that a cellular phone can be converted into a residential phone unavailing."); *Lowrey*, 2026 WL 2958730, at *7 ("[T]he text and structure of the statute support the conclusion that § 227(c) only applies to residential landlines.").

The TCPA's plain text and structure make clear that Congress intended to distinguish liability for communications to "residential" and cellular phones. First**,** the plain text of the TCPA shows that it does not apply to cellular phones. "[T]he language of the TCPA specifically provides that the regulations implemented pursuant to Subsection 227(c) concern only 'the need to protect residential telephone subscribers' privacy rights.'" *Cunningham v. Sunshine Consulting Grp., LLC*, 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018) (quoting 47 U.S.C. § 227(c)(1)), *report and recommendation adopted*, 2018 WL 5728534 (M.D. Tenn. Aug. 7, 2018). This is because "[c]ell phones do not present the same concerns as residential phones," as their "mobility and functionality to silence or decline calls alleviate the concerns inherent with a home telephone." *Gaker v. Q3M Ins. Sols.*, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023). In contrast, "[a] residential phone is a home phone that is hard-wired into the building. It means a land-line. It is *residential* in a very literal sense." *Moore*, 2023 WL 8601528, at *2.

By codifying that Section 227(c) only applied to residential telephone subscribers and not cell phone users, Congress intended for cell phones to be excluded from the provision: "[t]hat is the whole point of having written statutes; 'every statute's meaning is fixed at the time of enactment.'" *Loper*, 603 U.S. at 400 (internal citation omitted). At the time the TCPA was enacted in 1991, the

term "residential" meant being "adapted or restricted to or occupied by residences" or "of, relating to, or connected with residence or residences." *Residential*, Webster's Third New Int'l Dictionary of the English Language Unabridged (1993). "[T]herefore, a residential telephone is uniquely tied to a person's dwelling. . . . By contrast, a cellphone is a portable device that can be used anywhere by connecting to a mobile network." *Lowrey*, 2026 WL 2958730, at *6 (citing *Cellphone*, Merriam-Webster's Collegiate Dictionary 996 (10th ed. 1994)). This same logic was used by this District when questioning "whether cellular telephone subscribers were intended to be included in the definition of 'residential telephone subscriber[.]'" *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 362 n.7 (E.D. Pa. 2019). The Eastern District noted that by affording common-sense definitions of the terms chosen by Congress, a "residential telephone" describes "a telephone used by individuals in the home, and not a cellular telephone, which can be used anywhere." *Id.* (quoting Merriam-Webster). This Court should follow suit.

Second, the structure of the TCPA shows that Congress did not intend Section 227(c) to apply to cell phones. When courts interpret statutory text, "a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006). Here, "the TCPA specifically mentions 'cellular telephone service' in § 227(b) and § 64.1200(a)(1)(iii), indicating that both Congress and the FCC were aware of the distinction between a cellular telephone and a residential telephone and purposely protected only 'residential telephone subscribers' under § 227(c), § 64.1200(c) and (d)." *Shelton*, 378 F. Supp. 3d at 362 n.7. Similarly, "Congress appreciated the difference between a residential and cellular number because it prohibited telemarketing calls with artificial voices to both cellphones . . . and residential lines[.]" *Lowrey*, 2026 WL 2958730, at *7 (finding that Congress intentionally distinguished the terms "residential" and "cellular" and did

not use them synonymously) (internal citations omitted). And "it is generally presumed that Congress act[ed] intentionally and purposely in the disparate inclusion or exclusion." *Gozlon-Peretz v. United States,* 498 U.S. 395, 404 (1991) (internal citation omitted).

The legislative history of the TCPA confirms that this was intentional—Congress expressly considered the interests unique to cell phones when it enumerated "cellular" telephones in Section 227(b). *See Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 648 (2020) (Gorsuch, J., concurring in part) (explaining that Congress banned robocalls to cell phones "to address the problem" caused by "many cell phone users ha[ving] to pay for each call"). A co-sponsor of the TCPA also differentiated between "unsolicited automated calls to the home" and "automated calls to . . . cellular telephones." *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1232 (9th Cir. 2022) (Ikuta, J., dissenting in part) (citing 137 Cong. Rec. 30824 (1991) (statement of Sen. Bentsen)). Had Congress intended for Section 227(c) to apply to cell phones, it could have done so explicitly. It did not, and "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992).

Indeed, the "majority of the persuasive precedent" under the TCPA has applied a similar textual analysis to find that the term "residential telephone" does not include cell phones. *Johnson v. Palmer Admin. Servs., Inc.*, 2022 WL 17546957, at *8 (E.D. Tex. Oct. 20, 2022), *report and recommendation adopted*, 2022 WL 16919786 (E.D. Tex. Nov. 14, 2022) (discussing the meaning of "residential telephone subscriber" under 47 C.F.R. § 64.1200(d)); *see also, e.g.*, *Moore*, 2023 WL 8601528, at *2 (explaining that the TCPA's use of "residential telephone line" and "cellular telephone service" in close proximity to one another "is a strong clue that the two terms do not mean the same thing."); *Morgan v. U.S. Xpress, Inc.*, 2018 WL 3580775, at *2

(W.D. Va. July 25, 2018) ("Congress used different language to discuss cell phones and residential lines, further demonstrating that they are not interchangeable."). The same is true for the Do-Not-Call provision, under which courts regularly find that Section 227(c)'s limitation to only residential telephone subscribers excludes complaints where "Plaintiff alleges only the use of his cellular phone[]." *Politi*, 2019 WL 2519702, at *4 (collecting cases); *see also Gaker*, 2023 WL 2472649, at *3*; Sunshine Consulting Grp.*, 2018 WL 3496538, at *6; *Cunningham v. Spectrum Tax Relief LLC*, 2017 WL 3222559, at *3 (M.D. Tenn. July 7, 2017); *Cunningham v. Enagic USA, Inc.*, 2017 WL 2719992, at *5–6 (M.D. Tenn. June 23, 2017); *Lowrey*, 2026 WL 2958730, at *7.

Congress knew about cell phones in 1991, and it knew how to cover them. It did exactly that in Section 227(b), which expressly reaches calls to "any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). But Section 227(c) says no such thing. That omission was a choice, and the Court should honor it.

Third, in addition to the plain text and structure of the TCPA, a common-sense interpretation of the statute makes evident that Plaintiff's cell phone is not a residential device as that term is used in the TCPA. When interpreting statutory text without a definition, the Supreme Court has noted that "[a] word in a statute may or may not extend to the outer limits of its definitional possibilities. Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006). Here, as discussed *supra*, Congress distinguished "residential" devices and "cellular" devices in other sections of the TCPA. *See, e.g.*, *Barr*, 591 U.S. at 617 n.3 (acknowledging the separate restrictions for cell phones and residential phones). Under every mode of statutory construction, these are two

separate, distinct terms. Were the Court to interpret "residential" to broadly include cell phones, that would render this distinction superfluous and fundamentally rewrite the statute.

The Court, therefore, should embrace the TCPA's plain meaning, and dismiss Plaintiff's claim as it is solely predicated on allegations that text messages and voice calls were sent to his cellular phone.

### C. The Court Should Dismiss Plaintiff's Request for Treble Damages Under Rule 12(b)(6) Because Plaintiff Does Not Allege a Willful or Knowing Violation of the TCPA

The TCPA allows for an award of treble damages for violations done "willfully or knowingly." 47 U.S.C. § 227(c)(5). Buried within the boilerplate allegations in the Complaint, Plaintiff seeks treble damages as a result of the purported TCPA violations. Yet, the Complaint is devoid of any non-conclusory allegations that would allow this Court to find that he has adequately pled treble damages under the TCPA. Plaintiff pleads, at most, that "[b]ecause such violations were willful or knowing, the Court should treble the amount of statutory damages." (Compl. ¶ 47.) The Court should afford no weight to such a bare assertion at the motion to dismiss stage. *See Weingrad*, 2024 WL 4228149, at *5; *KHS Corp. v. Singer Fin. Corp.*, 376 F. Supp. 3d 524, 530 (E.D. Pa. 2019); *Zelma v. Art Conway*, 2013 WL 6498548, at *2 (D.N.J. Dec. 11, 2013). Plaintiff's request for treble damages should be dismissed accordingly.

## CONCLUSION

For the reasons set forth above, Power Home respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety.

Dated: November 9, 2026

Respectfully submitted,

*__/s/ Steven W Schlesinger__*
Steven W Schlesinger (Pa. Bar No. 332869)
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich St
New York, NY 10007
Tel.: (212) 808-7740
SSchlesinger@KelleyDrye.com

Whitney M. Smith (*pro hac vice* forthcoming)
**KELLEY DRYE & WARREN LLP**
7 Giralda Farms, Suite 340
Madison, New Jersey 07940
Tel.: (973) 503-5900
WSmith@KelleyDrye.com

*Counsel for Power Home Remodeling Group, LLC*

**MEET-AND-CONFER CERTIFICATION**

I hereby certify that on November 3, 2026, counsel for Defendant Power Home Remodeling Group, LLC informed Plaintiff's counsel of Defendant's intent to file this Motion to Dismiss, and asked counsel for his availability for a meet-and-confer. Counsel for Plaintiff responded on November 5, 2026, that he was available to meet and confer that day or the following day. Counsel for both parties then met and conferred via Microsoft Teams on November 6, 2026. During the meet-and-confer, counsel for Defendant outlined each basis for the foregoing motion; counsel for Plaintiff stated that based on the legal nature of Defendant's arguments, Plaintiff would not amend his Complaint and advised that he would oppose the Motion.

Dated: November 9, 2026

*/s/ Steven W Schlesinger*
Steven W Schlesinger

**CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2026, I caused the foregoing to be served via the Court's Electronic Case Filing (ECF) system upon the following:

**Andrew Roman Perrong, Esq.**
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Tel.: (215) 225-5529
a@perronglaw.com

*Counsel for Plaintiff*

Dated: November 9, 2026

*/s/ Steven W Schlesinger*
Steven W Schlesinger