**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MICHAEL SCOFIELD, individually and on behalf of all others similarly situated,

Plaintiff,

v.

POWER HOME REMODELING GROUP, LLC

Defendant.

Case No.: 2:26-cv-07016-KBH

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

Defendant Power Home Remodeling Group, LLC ("Power Home") sent two text message calls and placed two voice calls, all from the same telephone number, to Plaintiff Michael Scofield's personal cellular telephone number, which has been on the National Do Not Call Registry since 2004. (ECF No. 1, Compl. ¶¶ 15-17, 20-23.) The second text call, sent in Power Home's name, said: "We'll call you in the morning from 303-226-8145 or schedule your free estimate online!" Two days later, calls came from that very number. The caller, who said he was calling on behalf of Power Home, told Plaintiff that Power Home had received an online request for a window estimate, a request Plaintiff never made, and then transferred him to another representative, who scheduled an in-home appointment. A Power Home representative arrived at Plaintiff's home that same day. (*Id.* ¶¶ 20-29.)

Power Home's motion to dismiss (ECF No. 9-1, "Mot.") raises four arguments. Each has been rejected by multiple judges in this District, by the Third Circuit's own construction of the statute, or by the statute's text.

First, Power Home contends that text messages are not “telephone call[s]” under 47 U.S.C. § 227(c)(5). The Third Circuit has construed “call” in the TCPA to “encompass[] text messages,” and the courts of this District have uniformly held that texts are calls under § 227(c), most recently in *Dovberg v. Haller Enterprises, Inc.*, 2026 WL 3152723 (E.D. Pa. Oct. 21, 2026). Power Home’s brief does not cite a single one of those decisions. Second, Power Home argues that Plaintiff did not receive “more than one” call because he did not answer the first of two voice calls. Nothing in § 227(c)(5) requires a recipient to pick up the phone, and Plaintiff’s two texts independently satisfy the “more than one” requirement. Third, Power Home argues that a cell phone can never be “residential.” The FCC has said the opposite since 2003, and so have the courts of this Circuit. Fourth, Power Home asks the Court to “dismiss” Plaintiff’s request for treble damages. Treble damages are a discretionary remedy, not a pleading element, and the Complaint’s facts plausibly support them anyway. The motion should be denied.

## Background

### A. The statutory and regulatory framework.

Section 227(c) of the Telephone Consumer Protection Act (“TCPA”) directs the FCC to “protect residential telephone subscribers’ privacy rights to avoid receiving telephone solicitations to which they object,” 47 U.S.C. § 227(c)(1), and authorizes a national database of numbers of those who object, *id.* § 227(c)(3). The FCC’s regulations provide that “[n]o person or entity shall initiate any telephone solicitation to … [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry.” 47 C.F.R. § 64.1200(c)(2). A “telephone solicitation” is “the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.” 47 U.S.C. § 227(a)(4); *accord* 47 C.F.R. § 64.1200(f)(15).

The FCC has provided that these rules "are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers." 47 C.F.R. § 64.1200(e). Section 227(c)(5) gives a private right of action to "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). A plaintiff states a claim by pleading that "(1) [he] receive[d] multiple calls within twelve months, (2) by or on behalf of the same entity, (3) on a residential phone registered on the [Do-Not-Call Registry]." *King v. Bon Charge*, 823 F. Supp. 3d 508, 525 (D. Del. 2025) (quoting *Camunas v. National Republican Senatorial Committee*, 541 F. Supp. 3d 595, 604 (E.D. Pa. 2021)).

**B. Plaintiff's allegations.**

Plaintiff uses his cellular telephone number for personal, residential, and household purposes, and the number has been on the National Do Not Call Registry since 2004. (Compl. ¶¶ 4, 15-17.) He has never been a Power Home customer and never consented to hear from it. (*Id.* ¶¶ 14, 18.) Nevertheless, on June 20, 2026, he received two text message calls promoting Power Home's services, reproduced in a screenshot in the Complaint. (*Id.* ¶¶ 20-21.) The first consisted of a link. The second read: "This is Power Home Remodeling. We'll call you in the morning from 303-226-8145 or schedule your free estimate online! Msg&data rates may apply. Reply 'STOP' to end msgs." (*Id.* ¶ 21.)

On June 22, 2026, Plaintiff received a call from the same number, which he did not answer. (*Id.* ¶ 22.) He then received a second call from that number the same day and answered it. (*Id.* ¶ 23.) The caller said he was calling on behalf of Power Home and "represented that Defendant had received an online request for a window estimate." (*Id.* ¶ 24.) Plaintiff told the caller he had made no such request. (*Id.* ¶ 25.) The caller nonetheless transferred him to another

representative, who scheduled an appointment. (*Id.* ¶ 26.) Later that day, "Jon" arrived at Plaintiff's residence, identified himself as a Power Home representative and presented a company identification card and business card. (*Id.* ¶¶ 27-28.) Plaintiff explained that he had not requested an estimate and that the appointment had been scheduled to identify the entity responsible for the unsolicited telemarketing. (*Id.* ¶ 29.) Plaintiff sues on behalf of a nationwide class of Registry-listed subscribers who received more than one telemarketing call from or on behalf of Power Home within a 12-month period, and seeks statutory damages, treble damages for willful or knowing violations, and injunctive relief. (*Id.* ¶¶ 35, 42-47.)

## Legal Standard

A complaint survives a Rule 12(b)(6) motion if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]." *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

## Argument

### I. Section 227(c) of the TCPA reaches telemarketing text messages, which are "calls."

Power Home's lead argument is that Plaintiff's two text message calls do not count because a text is not a "telephone call" under § 227(c)(5). (Mot. at 5-8.) The Third Circuit and every judge in this District to have considered this issue has held otherwise.

#### A. The Third Circuit and this District treat texts as calls.

The Third Circuit has twice said so. "Although the text of the statute refers only to 'calls,' we have held that, under the TCPA, that term encompasses text messages." *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 117 n.3 (3d Cir. 2018) (citing *Gager v. Dell Financial Services, LLC*, 727

F.3d 265, 269 n.2 (3d Cir. 2013) ("The TCPA's prohibition on automated dialing applies to both voice calls and text messages.")); see also *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)."). Although those cases arose under § 227(b) and predate *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), they nevertheless construe the same word in the same statute that Power Home asks the Court to read differently here.

The judges of this District have uniformly applied that construction to § 227(c)(5) itself. In *Pero v. Brown-Daub Chevrolet of Nazareth*, No. 25-7016, 2026 WL 1747214, at *1, *5 (E.D. Pa. June 17, 2026), Judge Savage, "[c]onsidering the statutory language, the FCC regulations, and the decisions of an overwhelming majority of courts," held "that a text message is a call for purposes of 47 U.S.C. § 227(c)." In *Newell v. Children's Dental Health Associates, LLC*, No. 25-5238, 2026 WL 927378, at *9 (E.D. Pa. Apr. 6, 2026), Judge Murphy likewise "agree[d] with the FCC and many courts . . . that the statutory language 'calls' includes text messages." *Cole v. C/T Install America, LLC*, No. 25-3531, 2026 WL 916582, at *1 n.1 (E.D. Pa. Mar. 23, 2026), reached the same conclusion ("[N]othing in the text, structure or purpose of the TCPA suggests the barring of text messages under § 227(c) . . . ."), as did *Newell v. RxLink Inc.*, No. 2:25-cv-4270 (E.D. Pa. Mar. 12, 2026), cited in *Newell*, 2026 WL 927378, at *5. And in *Dovberg*, Judge Leeson, "[a]fter completing its own statutory analysis," held that "text messages qualify as phone calls for TCPA purposes," 2026 WL 3152723, at *4, and that "the Court finds Section 227(c)(5) covers text messages in its use of the word 'call,'" id. at *6. See also *Brown v. Rita's Water Ice Franchise Co. LLC*, 242 F. Supp. 3d 356, 362 n.30 (E.D. Pa. 2017) ("Text messages are 'calls' within the meaning of the TCPA."). Courts elsewhere in this Circuit agree. *Rubin v. Staples, Inc.*, No. 2:25-15515, 2026 WL 881651, at *6 (D.N.J. Mar. 31, 2026) (rejecting argument that texts

are not calls under § 227(c)(5)); *King*, 823 F. Supp. 3d at 525 ("A text message counts as a 'call.'").

Power Home cites none of these decisions. Its only in-Circuit authority is *Bronstin v. Happy Cabbage Analytics, Inc.*, 2026 WL 3343316 (M.D. Pa. Oct. 29, 2026), which, as Power Home describes it, rests on the premise that a 1991 telephone was an instrument that communicated through sound. (Mot. at 5-6, 8.) That decision does not bind the Court, and its premise is one that judges of this this District have considered and rejected many times over. And *Bronstin* is flawed as a techno-historical matter, as instruments for transmitting text over a telephone call existed long before 1991. Two examples of such technologies are TTY/TDD devices and pagers, addressed in Section I.B, *infra.*

Everything else Power Home cites is from outside this Circuit: *Steidinger v. Blackstone Medical Services*, 182 F.4th 532 (7th Cir. 2026); *Jones v. Blackstone Medical Services, LLC*, 792 F. Supp. 3d 894 (C.D. Ill. 2025); *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270 (N.D. Fla. 2025); *Lowrey v. Twilio, Inc.*, 2026 WL 2958730 (W.D. Va. Oct. 1, 2026); and the twelve district court decisions in its footnote 1, none from a court within the Third Circuit. (Mot. at 5-8 & n.1.) *Newell* considered *Davis* and *Jones* and declined to follow them. 2026 WL 927378, at *6, and *Dovberg* was decided after *Steidinger* and cited to the binding Third Circuit (and favorable Ninth Circuit) precedent described above. 2026 WL 3152723, at *5.

**B. A "telephone call" in 1991 was an attempt to communicate by telephone, and a text message is one.**

The TCPA does not define "telephone call," so the word carries its "ordinary, contemporary, common meaning" from the time of enactment. *Dovberg*, 2026 WL 3152723, at *4 (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). Power Home accepts this premise: "Every statute's meaning is fixed at the time of enactment." (Mot. at 5 (quoting *Loper Bright*,

603 U.S. at 400 (citation omitted)).) The question is what "call" meant in 1991. The Webster's dictionary of that era defined it as "to get or try to get into communication by telephone," *id.* (quoting *Cole*, 2026 WL 916582, at *1 n.1), and the Ninth Circuit read the verb in the TCPA to mean "to communicate with or try to get into communication with a person by telephone." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953-54 (9th Cir. 2009). Neither definition mentions sound. As *Wilson v. Better Mortgage Corp.*, 811 F. Supp. 3d 631, 637-38 (S.D.N.Y. 2025), concluded, "[t]he contemporary definition of 'telephone call' was therefore not limited to oral or vocal communications. It encompassed any communication made using a telephone." A text is a communication sent by telephone. As *Dovberg* put it, at its core, "[a] text message[, like a telephone call] is sent via telephone in an attempt to communicate with another person." 2026 WL 3152723, at *4 (quoting *Cole*, 2026 WL 916582, at *1 n.1); *accord Newell*, 2026 WL 927378, at *4 ("[T]exting fits comfortably within the understood meaning of 'call.'").

*Steidinger* reaches the opposite result by borrowing a sound-based definition of the *instrument*, a telephone was "[a]n instrument for reproducing sounds at a distance," and attaching it to the *communication*. 182 F.4th at 535-36. But the same sources defined a call as an attempt "to get into communication by telephone," which says nothing about sound. A "telephone call" is an "attempt to get into communication" through the "telephone;" it does not follow that the communication must itself be audible. Even *Steidinger* conceded that "§ 227(c)(5) covers more than telephone calls as they existed in 1991 (when such calls were often to landlines)." *Id.* at 536. And the sound-only premise would exclude at least two text-based telephone communications that were commonplace in 1991.

*First*, Congress's own Americans with Disabilities Act provisions, enacted a year *before* the TCPA, treat text-based relay services for the deaf as "calls." *See* 47 U.S.C. § 225(d)(5)

(prohibiting relay operators from keeping records of conversations "beyond the duration of the call"). TTY/TDD devices allow deaf and hard-of-hearing individuals to communicate using telephones by typing text messages that are transmitted to a compatible receiving device or to a relay operator. So, the ADA shows that Congress was acutely aware in 1991 that "telephone calls" could be, and for millions of deaf Americans, routinely were, conducted through text-based communication. This technology has been available since the 1960s, and grew out of the same technology, teletype machines, that transmitted written words using telephone lines.

"The contemporary definition of 'telephone call' was therefore not limited to oral or vocal communications. It encompassed any communication made using a telephone." *Better Mortg.*, 2025 WL 3493815, at *5. When Congress enacted the TCPA in 1991, it was legislating against the backdrop of the recently enacted ADA and the longstanding use of text-based telephone call technology used by the deaf community and by the millions of individuals and businesses who had teletypewriters, pagers, and telex machines alike. Congress chose to use the term "telephone call" rather than "voice call" or "spoken communication" in the TCPA, just as in the ADA, where it recognized text "calls." That choice should be understood as inclusive of all forms of communication sent and received by telephones, including text-based telephone "calls."

*Second*, the premise that text messaging did not exist when Congress enacted the TCPA in 1991 is historically incorrect. *Steidinger* never tested this premise and merely accepted as "undisputed" "because the first text message was not sent until [1992]." 182 F.4th 535. But this oft-repeated assertion that the first text message was sent in December 1992 confuses the first Short Message Service (SMS) transmission *to a cellular telephone* with the considerably older practice of transmitting *written messages* to portable devices *through the telephone network*. As early as 1981, patented paging technology permitted a caller to dial a recipient's telephone

number, enter a message, and have that message automatically transmitted to a portable pager for visual display. *See* U.S. Patent No. 4,263,480 (issued Apr. 21, 1981). Indeed, in 1985, the Colorado Supreme Court described commercially available digital display paging services, explaining that interconnected paging allowed a caller to dial a subscriber's assigned telephone number and automatically transmit a "three-digit coded message" to the recipient. *RAM Broad. of Colo., Inc. v. Pub. Utils. Comm'n*, 702 P.2d 746, 748-49, 748 n.2, 752 (Colo. 1985).

By 1989, the paging industry had standardized the Telocator Alphanumeric Protocol (TAP), which enabled alphanumeric messages to be submitted to paging systems. *See* U.S. Patent No. 5,272,465 (filed Nov. 13, 1991) (Background). And a patent issued in 1989 expressly described transmitting alphanumeric messages to paging receivers by placing a "local telephone call," including messages entered using the telephone's touch tone keypad. *See* U.S. Patent No. 4,868,562 (issued Sept. 19, 1989). Nor was this a niche technology; the industry counted 11.2 million paging subscribers in 1991. *Amendment of the Commission's Rules to Establish New Narrowband Personal Communications Services*, 8 FCC Rcd. 7162, 7163 (1993). Thus, the advent of *cellular* messaging in 1992 did not mark the invention of telephone-originated text messaging. When Congress enacted the TCPA, telephone calls had long been used to initiate communications that were received and displayed as text rather than reproduced as sound. The historical premise underlying *Steidinger* therefore cannot justify reading a voice-only limitation into the term "telephone call."

*Davis* and *Jones* reason from modern parlance ("no ordinary person would think of a text message as a 'telephone call'"). Mot. at 6. But as *Newell* explained, *Davis* "focused on modern parlance rather than considering the broader meaning of a 'telephone call' at the time the statute was enacted in 1991, as we think is appropriate," and *Jones* likewise focused its analysis on

"today's American parlance." 2026 WL 927378, at *6. That *cellular* messaging did not exist in 1991 is not a reason to exclude it: "the fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Id.* at *7 (quoting *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 212 (1998)).

**C. The structure of § 227 confirms that texts are calls.**

Power Home's structural argument, like *Steidinger*'s, is that § 227(a)(4) speaks of a "telephone call or message" while § 227(c)(5) refers only to a "telephone call." (Mot. at 8 (quoting *Davis*, 797 F. Supp. 3d at 1274).) But the statute's own use of the two words shows they are not mutually exclusive: § 227(b)(1)(B) prohibits initiating "any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message." 47 U.S.C. § 227(b)(1)(B). In Congress's usage, a "call" is the act of *initiating* telephone communication and a "message" is what the call delivers. As *Dovberg* put it, "the statute's description of a solicitation as a call or a 'message' may be read to include text messages," because it "illustrates how solicitations go beyond mere telephone calls." 2026 WL 3152723, at *4. And § 227(c)(5) itself makes it an affirmative defense that the defendant implemented reasonable practices "to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection," 47 U.S.C. § 227(c)(5), a defined term that includes a "message." Congress would not have written a defense reaching messages into a cause of action that excludes them. See also *Rubin*, 2026 WL 881651, at *6 ("Staples fails to show that Congress's definition applicable only to subsection (e) undermines Congress's express intent to protect residential telephone subscribers from unwanted 'telephone solicitations,' which include both calls and messages.").

Reading "call" in § 227(c)(5) to exclude texts also creates what *Better Mortgage* called "an irrational asymmetry": "Limiting § 227(c)'s reach to telephone voice calls while § 227(b) covers voice as well as text messages would create an irrational asymmetry at odds with the statute's text and structure." 811 F. Supp. 3d at 641. Section 227(b) refers to "call" and reaches texts, and the Supreme Court has said as much. *Campbell-Ewald*, 577 U.S. at 156. The same word in a neighboring subsection should not mean something different. See *Dovberg*, 2026 WL 3152723, at *5 ("a text message qualifies as a telephone call for purposes of Section 227(c) when considering the structure of the TCPA"). Reading it that way would also "yield potentially absurd inconsistencies," *Newell*, 2026 WL 927378, at *6, and leave a telemarketer free to text a number it cannot lawfully call. *Satterfield* said as much: "a voice message or a text message are not distinguishable in terms of being an invasion of privacy." 569 F.3d at 954.

**D. The FCC's consistent interpretation is persuasive, and the Court reaches the same result independently.**

Plaintiff does not ask the Court to defer to the FCC. After *Loper Bright* and *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), the Court "must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *Dovberg*, 2026 WL 3152723, at *5 (quoting *McLaughlin*, 606 U.S. at 155). Here, the text and the agency point the same way. In 2003, the FCC explained that the TCPA's prohibition "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003). In 2023, it confirmed the Registry's plain language protections extend to texts, explaining that "[t]exters must have the consumer's prior express invitation or permission before sending a marketing text to a wireless number in the DNC Registry," and noting that "it

would be anomalous to conclude that text messages to wireless numbers are 'calls' for one part of the Commission's TCPA rules but not for the DNC protections." *Targeting & Eliminating Unlawful Text Messages*, 38 FCC Rcd. 12247, 12256-57 ¶¶ 26-27 (2023). The regulation, 47 C.F.R. § 64.1200(e), makes the Registry rules "applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers."

Power Home responds that the 2003 Order addressed only § 227(b). (Mot. at 6-7.) But Plaintiff relies on the 2023 Order and § 64.1200(e), which apply the Registry rules to texts expressly. *Pero* held that, in doing so, the FCC "did not intrude on Congressional prerogative or exceed its mandate," and that its interpretation therefore deserves "considerable weight." 2026 WL 1747214, at *3. *Newell* found "no reason to disagree with the FCC's persuasive reading of the TCPA." 2026 WL 927378, at *7. *Dovberg* found the regulations "persuasive" as well. 2026 WL 3152723, at *5. Power Home's reliance on *McLaughlin* (Mot. at 7) proves nothing. The question after *McLaughlin* is what the statute means, and whether the agency's interpretation comports with the best reading of the statute. Here, the statute and the FCC's reading agree.

**E. *Steidinger* does not change the analysis.**

*Steidinger* is not binding, and the Third Circuit has already construed the term "call." *Steidinger* also discounted *Campbell-Ewald* as an assumption, 182 F.4th at 537, but, as *Dovberg* observed, the Supreme Court's statement that it was "undisputed" that a text is a call has persuaded the courts of this District, and the Ninth Circuit decision the Supreme Court reviewed had "already appl[ied] the TCPA to text messages." 2026 WL 3152723, at *5 (quoting *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 876 (9th Cir. 2014)). *Steidinger* itself acknowledged that the Ninth Circuit has held that "a text message is properly deemed to be a 'call' within the meaning of the TCPA." 182 F.4th at 538 (citing *Howard v. Republican National Committee*, 164 F.4th

1119, 1124 (9th Cir. 2026)). And *Steidinger*'s rejection of the FCC's Registry rule, on the ground that the Registry was created under § 227(c)(3), *id.*, overlooks that § 227(c)(5) creates a remedy for violations of "the regulations prescribed under this subsection," which includes § 64.1200(e)'s express reference to "text messages" as a regulation prescribed thereunder. 47 U.S.C. § 227(c)(5). The Court should follow its colleagues in this District, not the Seventh Circuit, and deny the motion to the extent it rests on the premise that text calls are not calls.

## II. The Complaint plausibly alleges more than one call in violation of the regulations.

Power Home next argues that, if texts are set aside, Plaintiff received only one "telephone solicitation" voice call because he did not answer the first and the Complaint does not plead its content. (Mot. at 9-10.) The argument fails for three reasons.

### A. The two text messages alone satisfy the "more than one" requirement.

Because texts are calls (Part I), Plaintiff received two calls on June 20, 2026, both from Power Home's number, and both in violation of § 64.1200(c)(2). Power Home's only response is a footnote contending that neither text is a "telephone solicitation." (Mot. at 10 n.3.) That footnote ignores the statutory definition, which reaches a call or message sent "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 U.S.C. § 227(a)(4). The purpose of a text or call turns on its content and context, using "a measure of common sense." *Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094, 1102 (D. Ariz. 2024) (quoting *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)); see also *Better Mortgage*, 811 F. Supp. 3d at 645 (citing *Chesbro*, 705 F.3d at 918). And "neither the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context." *Coffey v. Fast Easy Offer, LLC*, 178 F.4th 480, 483 (9th Cir. 2026) (quoting *Chesbro*, 705 F.3d at 918).

The context here leaves no doubt. The second text is signed "Power Home Remodeling," tells Plaintiff Power Home will call him, and invites him to "schedule your free estimate online!" A home-remodeling company offering an estimate for home improvements is encouraging the recipient to consider purchasing its remodeling services, as an estimate is how the sale begins. The first text, a bare link sent minutes apart from the same number, invites the recipient to click for the same thing. *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 202-03 (D. Mass. 2021), is instructive. There, a text message call bearing the sender's name and a link was a solicitation because the texts "provided no other pretext for why she should come." Power Home's reliance on *Robert W. Mauthe M.D., P.C. v. Millennium Health LLC*, 58 F.4th 93, 97 (3d Cir. 2023), is misplaced. As Power Home itself describes it, *Mauthe* concerned a fax inviting recipients to a free seminar that did not attempt to sell anything. (Mot. at 10 n.3.) Here, the texts were followed within two days by a call from the same number about a "window estimate" and an appointment with a Power Home representative attempting to sell its products. At the very least, the purpose of the texts is "a question of fact not suitable for disposition" on a motion to dismiss. *Abboud*, 731 F. Supp. 3d at 1104 (cleaned up); see *Newell*, 2026 WL 927378, at *9 ("Determining whether a regulatory exception applies at this stage is therefore premature.").

**B. An unanswered call is still a call "received" in violation of the regulations.**

Even setting the texts aside, § 227(c)(5) gives a cause of action to a person who "has received more than one telephone call" in violation of the regulations. It does not say "answered." The regulation prohibits "initiat[ing]" a telephone solicitation to a Registry number, 47 C.F.R. § 64.1200(c)(2), so the violation is complete when the call is placed. The Ninth Circuit so held in a case with two unanswered calls: the regulation "prohibits the initiation of a call to a telephone number that has been placed on the FTC do-not-call registry," and "[w]hether the call

was answered is irrelevant under the regulation." *Barton v. JMS Associate Marketing, LLC*, No. 21-35836, 2023 WL 2009925, at *2 (9th Cir. Feb. 15, 2023) (mem.). The Ninth Circuit reversed the denial of damages for the unanswered calls, and on remand the Western District of Washington awarded $1,500 for each. *Barton v. J.M.S. Associate Marketing, LLC*, No. 3:21-cv-05509, 2023 WL 5277682, at *2 (W.D. Wash. Aug. 16, 2023). And the Sixth Circuit, construing the very sentence at issue, held that "[t]he requirement of being a 'person who has received more than one telephone call' is merely a threshold requirement that, once met, allows recovery for each call," and it explained that, because the regulations "focus on the telephone call itself," the statutory "violation" is the initiation of the call. *Charvat v. GVN Michigan, Inc.*, 561 F.3d 623, 630-31 & n.8 (6th Cir. 2009). The Eastern District of Pennsylvania has said the same of the parallel regulation: it "focus[es] on the phone call itself." *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 365 (E.D. Pa. 2019). Courts reading § 227(b) have likewise held that a defendant violates the statute "each time it placed a call . . . regardless of whether the call was answered by a person, a machine, or not at all." *King v. Time Warner Cable*, 113 F. Supp. 3d 718, 725 (S.D.N.Y. 2015).

Power Home's contrary reading adds the word "answered" to the statute. It would also permit any telemarketer to place unlimited calls to the Registry so long as recipients are wise enough not to pick up. Statutory readings "which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Newell*, 2026 WL 927378, at *6 (quoting *First Merchants Acceptance Corp. v. J.C. Bradford & Co.*, 198 F.3d 394, 402 (3d Cir. 1999)). The Complaint pleads two calls from the same number on June 22, 2026. (Compl. ¶¶ 22-23.) That is "more than one."

**C. The context supports a reasonable inference that the unanswered call was a solicitation.**

Power Home argues that the Complaint pleads nothing about the content or purpose of the first call. (Mot. at 9-10.) But a call's purpose is not limited to its words. A court "must consider not only the content of the messages [the plaintiff] received, but also their context as it illuminates Defendants' purpose in initiating the messages," and an allegation that "one purpose" was to encourage a purchase is "enough to satisfy the statutory definition." *Coffey*, 178 F.4th at 483-84. A call need not offer anything for sale; it "may merely encourage the future purchase of property or services." *Abboud*, 731 F. Supp. 3d at 1102 (cleaned up).

The Complaint's context permits one inference. On June 20, Power Home texted Plaintiff that it would "call you in the morning from 303-226-8145" to schedule an estimate. On June 22, that number called Plaintiff, and then called him again. The second call, made on behalf of Power Home, offered a "window estimate" and ended in an at-home sales appointment. (Compl. ¶¶ 20-26.) Two calls from the same number, on the same day, following a text that announced Power Home's intent to call from that number, are most reasonably read as one effort by one company for one purpose, a sales appointment. Drawing every reasonable inference in Plaintiff's favor, as the Court must, the first call was a solicitation by Power Home. *Weingrad v. Top Healthcare Options Insurance Agency Co.*, 2024 WL 4228149 (E.D. Pa. Sept. 17, 2024), as Power Home describes it, involved "bare-bones conclusions" that the "purpose" of a call was to sell services without "further factual enhancement" about the call's contents, calling about health insurance. (Mot. at 9.) Here, the Complaint pleads two text message calls identifying Power Home and advising the purpose of the calls from the same number, then a call from that number that sought to schedule an in-home estimate. That is the factual enhancement *Weingrad* lacked. Plaintiff's decision to keep the appointment in order to identify the caller changes nothing. *See*

*Shelton v. National Gas & Electric, LLC*, 2019 WL 1506378, at *5 (E.D. Pa. Apr. 5, 2019) ("A plaintiff must know the name of the telemarketer that violated the TCPA in order to bring suit against it, and the content of the message can help prove that it was a solicitation.").

## III. Plaintiff plausibly alleges that he is a "residential telephone subscriber."

Power Home's third argument is that a cell phone can never be "residential," so Plaintiff's claim fails as a matter of law. (Mot. at 10-15.) That categorical rule contradicts the FCC's regulations and orders, the courts of this Circuit, and the statute's text.

### A. The FCC has presumed since 2003 that Registry-listed wireless subscribers are "residential" subscribers.

When the FCC created the National Do Not Call Registry, it addressed this very argument. A wireless carrier contended that "residential subscribers" should be defined to mean a customer's primary residential service. The FCC rejected this argument:

> Nextel's definition of "residential subscribers" is far too restrictive and inconsistent with the intent of section 227. Specifically, there is nothing in section 227 to suggest that only a customer's "primary residential telephone service" was all that Congress sought to protect through the TCPA. In addition, had Congress intended to exclude wireless subscribers from the benefits of the TCPA, it knew how to address wireless services or consumers explicitly. . . . As described, it is well-established that wireless subscribers often use their wireless phones in the same manner in which they use their residential wireline phones.

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14038 ¶ 35 (2003) ("2003 Order"). The FCC therefore "conclude[d] that wireless subscribers may participate in the national do-not-call list" and, "[a]s a practical matter, since determining whether any particular wireless subscriber is a 'residential subscriber' may be more fact-intensive than making the same determination for a wireline subscriber, we will presume wireless subscribers who ask to be put on the national do-not-call list to be

'residential subscribers.'" *Id.* at 14039 ¶ 36. The FCC's regulation then made the Registry rules "applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers to the extent described in" that Order. 47 C.F.R. § 64.1200(e). Power Home's brief never mentions § 64.1200(e) or the presumption.

**B. Courts of appeals and the courts of this Circuit agree.**

The only courts of appeals to squarely address the issue have that "a presumptively residential cell phone can be residential even when used for both personal and business purposes," and that registered cell phones are "presumptively 'residential' within the meaning of § 227(c)." *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1224-25 (9th Cir. 2022). The defendants there "conceded that cell phones can be 'residential' for purposes of § 227(c)," *id.* at 1223, and the Ninth Circuit applied the presumption at the pleading stage, leaving it to defendants, "[a]fter discovery," to attempt to rebut it. *Id.* at 1225-26. The First Circuit has likewise said that an argument "that cell phone users are not 'residential telephone subscribers' runs headlong into the FCC's express statements to the contrary." *Murray v. Grocery Delivery E-Services USA Inc.*, 55 F.4th 340, 348 (1st Cir. 2022). And the Third Circuit affirmed a judgment under § 227(c) for a plaintiff who received "unsolicited telemarketing calls on his personal phone," holding that he had standing where nothing suggested he used the phone for business. *Shelton v. Fast Advance Funding, LLC*, 805 F. App'x 156, 157, 159 (3d Cir. 2020) (nonprecedential).

The courts of this Circuit have been just as consistent. "The consensus in this Circuit is that Do Not Call claims may apply to cell phones." *Dudley v. Vision Solar, LLC*, No. 21-659, 2021 WL 3077557, at *5 (E.D. Pa. July 21, 2021). *Dovberg* held just this, that "[c]ell phone users who use their phones for personal use qualify as residential subscribers under the TCPA," and an allegation that the cell phone is used for residential purposes and is on the Registry is

"sufficient to proceed with a do-not-call claim." 2026 WL 3152723, at *6. *Accord Rubin*, 2026 WL 881651, at *4-6 (rejecting the same argument; "Section (c)(5) authorizes a private right of action to a 'person who has received more than one telephone call' without regard to what type of line or telephone technology receives those calls."); *Atkinson v. Choice Home Warranty*, No. 22-04464, 2023 WL 166168, at *4-5 (D.N.J. Jan. 11, 2023) (Registry listing plus allegation of residential use sufficient; noting that "some courts begin with a presumption that a cellular phone number is 'residential' where it has been registered on the national do-not-call registry"); *Fridline v. Millennia Tax Relief, LLC*, 727 F. Supp. 3d 517, 524 n.45 (M.D. Pa. 2024) (cell phone "qualif[ies] as a 'residential telephone subscriber'"); *King*, 823 F. Supp. 3d at 525 (citing *Jackson v. Direct Building Supplies LLC*, 2024 WL 184449, at *4-8 (M.D. Pa. Jan. 17, 2024) ("alleging that a cell phone number on the Do-Not-Call Registry is a 'residential telephone' line is enough to avoid dismissal")). Power Home cites none of these authorities. Its contrary authorities (Mot. at 11-14) are non-binding decisions from outside this Circuit that rest on dictionary definitions of "residential" and on the premise that a cell phone "can be used anywhere," arguments that the district courts in this Circuit have routinely and unanimously considered and rejected. *See also Klassen v. Solid Quote LLC*, 702 F. Supp. 3d 1052, 1057 (D. Colo. 2023) ("The Court firmly disagrees with SolidQuote and holds that a cellular phone, provided adequate facts are established, can and should be considered residential.").

### C. The statute protects a type of ***subscriber***, not a type of ***technology***.

Power Home's textual argument contrasts § 227(b), which refers to "cellular telephone service" and "residential telephone line[s]," with § 227(c), which refers only to "residential telephone subscribers," and infers that Congress excluded cell phones from § 227(c). (Mot. at 12-14.) The FCC answered that argument in 2003 ("it knew how to address wireless services or

consumers explicitly"), and the courts that have addressed it since *Loper Bright* agree that it misreads the statute. *Jackson*, 2024 WL 184449, at *6.

Unless otherwise defined, statutory text is given its ordinary meaning in the relevant context at the time Congress enacted the statute. *New Prime*, 586 U.S. at 113. A "subscriber" is anyone who receives a bill in exchange for service, so a person can be a "*telephone* subscriber" to any *telephone* service. *See Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 206 (S.D.N.Y. 2024). That leaves the word "residential," which, as used in the TCPA, is simply the opposite of "business." *See Isaacs v. USHealth Advisors, LLC*, 2025 WL 2268359, at *2 (N.D. Ga. Aug. 7, 2025); 47 C.F.R. § 64.2305(d). The word "residential" thus refers to the *purposes* for which a phone is *used*, not its physical characteristics or location. *Jackson*, 2024 WL 184449, at *5-7. This distinction extends well prior to the enactment of the TCPA. In *Ottensmeyer v. Chesapeake & Potomac Tel. Co.*, the Fourth Circuit addressed a dispute over telephone company tariffs where whether service was provided as a "business" or "residence" depended on whether the "use is primarily or substantially of a business, professional, institutional or occupational nature" and that service may be classified as "residen[tial]" "where the primary use of the service is of a domestic nature and where the business use, if any, is merely incidental." 756 F.2d 986, 989 n.4 (4th Cir. 1985). *Ottensmeyer* demonstrates that courts around the time of the TCPA's enactment understood "residence service" to be a recognized *use* of telephone service, as opposed to merely a description of where the telephone happened physically to be located. Moreover, the classification turned principally on the character of the subscriber's service and use, with mixed use expressly contemplated.

Power Home's remaining points, that a cell phone is "portable" and users can "silence or decline calls" (Mot. at 11-12), conflict with the TCPA's stated purpose "to protect residential

telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Power Home's reading would protect the privacy interest of a home landline subscriber but not a home cellular subscriber, even when a cell phone is the sole phone for home use, as is increasingly the case. As the Third Circuit has said, addressing Section 227(b), the TCPA's "particular concern for residential calls does not limit—either expressly or by implication—the statute's application to cell phone calls." *Susinno v. Work Out World Inc.*, 862 F.3d 346, 349 (3d Cir. 2017).

**D. The Complaint pleads residential use.**

Plaintiff alleges that his number is a non-commercial cellular number that he uses for personal, residential, and household purposes and that it has been on the Registry since 2004. (Compl. ¶¶ 15-17.) That is enough at the pleading stage. *Jackson*'s textualist analysis is particularly instructive on this point. There, the Middle District of Pennsylvania held that calls to cell phones can be calls to residential subscribers because, as a matter of statutory construction, "residential" and "telephone" are both adjectives that modify "subscriber" and describe the type of subscriber protected, a residential one, regardless of the technology the subscriber chooses to use. *Id.* at *5. And, as noted above, that conclusion finds support in FCC regulations dating to the 1990s that define "residential subscriber" as a subscriber who is not a subscriber to a telephone service for businesses. Nothing in the text suggests that Congress conditioned recovery on the presence of a physical wire.

In *Dudley*, "the explicit allegation that the cell phone numbers were used 'for residential purposes' [wa]s sufficient to plausibly allege that they were, in fact, used for such purposes and that additional allegations of fact are simply not necessary." 2021 WL 3077557, at *5. *Accord Dovberg*, 2026 WL 3152723, at *6-7; *Chennette*, 50 F.4th at 1225-26; *Temescal*, 525 F. Supp. 3d

at 201-02. Power Home's argument is a fact-bound challenge to Plaintiff's use of his phone that must await discovery. See *Klassen*, 702 F. Supp. 3d at 1057-58 (further challenge "is more appropriately addressed in a motion for summary judgment or at trial").

## IV. Plaintiff's request for treble damages is not a basis for dismissal.

Power Home's last argument is that the Court should "dismiss" Plaintiff's request for treble damages because the Complaint's allegation of a willful or knowing violation is conclusory. (Mot. at 15.) The argument misunderstands both the statute and the procedural posture.

### A. Treble damages are an enhancement the Court may award, not an element of a cause of action.

Section 227(c)(5) provides that "[i]f the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B)." 47 U.S.C. § 227(c)(5). That is an enhancement the court (or a jury) may order after a violation is established. It is not a claim. *King*, 823 F. Supp. 3d at 527 ("the possibility of treble damages . . . is not a separate cause of action; it is simply an enhancement of the damages available"). Plaintiff pleads one count under § 227(c)(5) and requests enhanced damages in his prayer. (Compl. ¶¶ 42-47 & Prayer for Relief.) There is no separate "claim" for treble damages to dismiss. *Compare id.* (dismissing without prejudice a separate count seeking only to allege willfulness), with *id.* at 528 (granting leave to amend).

Courts therefore decline to entertain this kind of motion. In *Better Mortgage*, the defendant moved under Rule 12(b)(6) to dismiss the plaintiff's prayer for treble damages for failure to allege a willful or knowing violation. The court denied the request "as procedurally

premature": "Motions to dismiss are ordinarily not properly directed at species of damages, save where such relief is categorically unavailable. . . . Treble damages are not an independent cause of action. . . . Whether the record can support such damages requires an as-yet undeveloped factual record." 811 F. Supp. 3d at 645 (cleaned up). Treble damages are not categorically unavailable under § 227(c)(5), as the statute provides for them. The same result follows here.

**B. The Complaint also pleads facts supporting a willful or knowing violation.**

Even if the Court reached the question, the Complaint does not rest on the "bare assertion" Power Home describes. (Mot. at 15.) In this Circuit, a willful or knowing violation requires "more than a mere showing that the transmission of a [call] was itself intentional," and "encompasses knowing, intentional, or reckless conduct." *Fridline*, 727 F. Supp. 3d at 525-26 (cleaned up). But it does not require knowledge of the law. A defendant acts knowingly where it "knowingly committed the offense the TCPA prohibits." *Robert W. Mauthe, M.D., P.C. v. MCMC LLC*, 387 F. Supp. 3d 551, 571-72 (E.D. Pa. 2019) (fax case; citing *Kline v. United Northern Mortgage Bankers Ltd.*, 2018 WL 4404674, at *2 (M.D. Pa. Sept. 17, 2018)). Courts have found the standard satisfied, or adequately alleged, where the defendant knew it lacked consent to contact the plaintiff and made the contact anyway. *Kline*, 2018 WL 4404674, at *2 (denying motion to dismiss treble damages claim where plaintiff alleged defendant "knew that [it] did not have [his] prior . . . express consent"); *Shelton*, 378 F. Supp. 3d at 363 (treble damages where defendant admitted it lacked consent, did not scrub against the Registry, and had no relationship with the plaintiff, "[y]et" made 22 solicitation calls).

The Complaint here alleges that Power Home sent text message calls and placed voice calls to a number that had been on the Registry for roughly twenty-two years, that Plaintiff had never been its customer, and that he never consented. (Compl. ¶¶ 14-18, 20-23.) It alleges that

Power Home's caller told Plaintiff that Power Home had received an "online request for a window estimate" that Plaintiff never made. (*Id.* ¶¶ 24-25.) And when Plaintiff said he had made no such request, Power Home did not end the call. It transferred him to a second representative, scheduled an in-home appointment, and dispatched a representative to his home the same day. (*Id.* ¶¶ 25-28.) A defendant that tells a consumer listed on the Registry that he asked for a sales visit, is told he did not, and sends a representative anyway, has plausibly acted knowingly, or at least recklessly. Power Home's cases do not hold otherwise. *KHS Corp. v. Singer Financial Corp.*, 376 F. Supp. 3d 524, 530 (E.D. Pa. 2019), was decided after a bench trial, on evidence that the defendant believed it had permission to send the faxes at issue. *Zelma v. Art Conway*, 2013 WL 6498548, at *3 (D.N.J. Dec. 11, 2013), as *Mauthe v. MCMC* describes it, dismissed a treble damages claim where the plaintiff offered no plausible factual allegation that the defendants acted willfully and knowingly. Finally, Power Home cites *Weingrad* only for the proposition that a "bare assertion" deserves no weight. (Mot. at 15; *see* Compl. ¶¶ 45, 47.) Plaintiff pleads facts. Whether they warrant enhanced damages is a question for the Court, or ultimately, a jury, after a violation is established.

## V. In the alternative, Plaintiff requests leave to amend.

Plaintiff believes the Complaint is sufficient. But if the Court finds any allegation lacking, Plaintiff respectfully requests leave to amend. See Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); *King*, 823 F. Supp. 3d at 528 (granting leave to amend). Plaintiff could, for example, plead additional detail regarding the timing and circumstances of each communication to demonstrate willfulness, the use of his number, and the facts bearing on Power Home's knowledge. Power Home's meet and confer certification does not alter this request. Plaintiff declined to amend because he wished to review the motion, and

because most of Power Home's arguments present legal issues, not because the Complaint cannot be improved.

**Conclusion**

For these reasons, Power Home's motion to dismiss should be denied in its entirety. The Third Circuit's construction of the word "call," the decisions of the courts of this District, and the TCPA's text, structure, and purpose all confirm that Plaintiff's texts and calls are actionable under § 227(c)(5). The Complaint plausibly alleges that Plaintiff received more than one call from Power Home in violation of the Registry rules on a residential line, and that Power Home's violations were knowing. Alternatively, Plaintiff should be granted leave to amend.

Dated: November 23, 2026

Plaintiff,
By Counsel
/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
Perrong Law LLC
1669 Edgewood Road, Suite 218
Yardley, PA 19067
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com
Attorney for Plaintiff and Proposed Class

**CERTIFICATE OF SERVICE**

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

November 23, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.